### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ROBERT L. WILKENS, JR.,

                    Petitioner,                  CASE NO. 06-cv-15120

v.                                       JUDGE PAUL D. BORMAN
                                       UNITED STATES DISTRICT COURT

BLAINE LAFLER,

                    Respondent.

_____/

### OPINION AND ORDER
### DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Robert L. Wilkens, Jr., a state inmate currently incarcerated at the Michigan Reformatory in Ionia, Michigan,[1] filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights.  In his *pro se* pleadings, Petitioner challenges his convictions for (1) two counts of first-degree criminal sexual conduct (during the commission of a felony), MICH. COMP. LAWS § 750.520b(1)(c), (2) one count of producing child sexually abusive material, MICH. COMP. LAWS § 750.145(c), and (3) one count of eavesdropping through installation of a camera, MICH. COMP. LAWS § 750.539d.  Following his convictions, Petitioner was sentenced, as a habitual offender, third, to (1) thirty-five years, five months to sixty years in prison for each criminal sexual conduct conviction, (2) twenty to forty years

_____

    [1]Petitioner was incarcerated at the St. Louis Correctional Facility when he originally filed his petition for writ of habeas corpus; however, he has since been transferred to the Michigan Reformatory.  The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated.  Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006).  In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption.  However, because the Court is denying the petition in this case, it finds no reason to do so.

in prison for the production of child sexually abusive material conviction, and (3) two to four years

in prison for the eavesdropping conviction.  All Petitioner's sentences are to be served concurrently.

For the reasons stated below, the Court denies the petition.

## I.    BACKGROUND

This Court adopts the findings of fact as outlined in the Michigan Court of Appeals'

decision. Those facts are presumed to be correct under 28. U.S.C. § 2254(e)(1).  The Court of

Appeals summarized the facts of the case as follows:

> In March 2003, Detective Robert Peto and Sergeant Craig Annas of the
> Ypsilanti Police Department went to [Petitioner's] home to investigate criminal
> allegations unrelated to this case.  The officers requested consent to search
> [Petitioner's] home for a gun or knife.  [Petitioner] provided written consent to
> search his home except for rooms rented to tenants.  While looking in the shower,
> Detective Peto observed a homemade device with electrical switches and a motion
> detector.  He thought it was suspicious because it is unusual to have electrical
> switches and a motion detector in a shower, especially when female tenants used the
> shower.  Detective Peto also saw a "small, approximate quarter-inch hole drilled
> underneath where the sensor normal-sensor housing normally is."  Detective Peto
> flashed his light on the hole and saw the reflection of glass, which appeared to him
> to be the lens of a microcamera.  Because Detective Peto and Sergeant Annas knew
> that [Petitioner's] tenants used the shower, they arrested [him] for eavesdropping.
> They also halted their search of the home, and Detective Peto left to obtain a search
> warrant.
>
> Upon execution of the search warrant, Detective Peto retrieved the camera
> behind the panel.  He found that the wiring from the camera led to recording systems
> in both [Petitioner's] bedroom and the living room.  A working remote control for
> the system was also found in [Petitioner's] bedroom.  The officers seized video and
> camera equipment, including a camera from atop [Petitioner's] dresser, audio and
> visual recordings, and sexual toys and photographs.
>
> Detective Peto testified that, during the initial consent search, he and
> Sergeant Annas found two videotape recordings between the mattresses on
> [Petitioner's] bed.  They were not concerned about the videotape recordings at the
> time.  They were not looking for videotapes, and [Petitioner] volunteered that they
> were his personal videotape recordings.  When the officers executed the search
> warrant later that night, however, they seized several other videotapes. On one tape,
> entitled "Mixed Signals," [Petitioner] had recorded himself, a 14-year-old male, and

2

a 16-year-old female engaging in sexual acts.

*People v. Wilkens*, 267 Mich.App. 728, 731-32, 705 N.W.2d 728, 732-33 (2005).

Following a bench trial in the Washtenaw County, Michigan, circuit court, Petitioner was convicted and sentenced as stated above.

Subsequently, Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

I.  [Petitioner's] federal and state constitutional rights to be free from unreasonable searches and seizures were violated and the trial court reversibly erred in denying his motion to suppress the evidence derived, where it was all the poisonous fruit of an illegal search, one which exceeded the scope of consent and was not within the plain view exception.

II.  A.  The trial court abused its discretion and violated [Petitioner's] federal and state constitutional rights to due process and the effective assistance of counsel when it ordered that this case be tried first when the defense was unprepared to fully proceed on a motion to suppress evidence.

B.  Alternatively, trial counsel denied [Petitioner's] federal and state constitutional rights to the effective assistance of counsel where he failed to adequately prepare, having failed to file a motion to suppress pretrial, costing [Petitioner] the evidentiary hearing that the court set in anticipation that counsel would file the motion and costing [Petitioner] the ability to have the court consider testimony that [he] would have given at that evidentiary hearing.

III.  The trial court reversibly erred in denying [Petitioner's] request for a polygraph test, under [MICH.COMP.LAWS] § 776.21, in relation to the search issue, as being untimely.

IV.  The trial court reversibly erred in holding that consent was not a viable defense to a criminal sexual conduct charge, [MICH.COMP.LAWS] § 750.520b(1)(c), where the alleged victim was [sixteen]-years old, when the underlying felony is a charge of producing child sexually abusive material under [MICH.COMP.LAWS] § 750.145(c), which defines a child as a person less than [eighteen]-years old. The trial court violated [Petitioner's] state and federal constitutional rights to present a defense.

3

> V.     [Petitioner] is entitled to resentencing where the trial court erred in overruling the defense's objections to scoring Offense Variables 4 and 9, and the sentences imposed are in excess of the correct guidelines range.

Petitioner also filed a *pro se* supplemental brief in the Court of Appeals, raising the following five additional claims:

> I.     The trial court reversibly erred and violated [Petitioner's] federal and state constitutional rights to due process of law and equal protection when the trial court found him guilty notwithstanding the elements of the offense he was charged with in Count I.

> II.    [Petitioner's] federal and state constitutional rights to be confronted by and cross examine witnesses against him were violated when witness [V.C.][2] was not produced for trial and subsequent conviction for first-degree criminal sexual conduct.

> III.   The judgment of the trial court of [Petitioner's] guilt in Count 2 is in violation of state law, [MICH.COMP.LAWS] § 750.520b(1)(d), and [Petitioner's] federal and state due process and equal protection rights.

> IV.    [Petitioner's] federal and state constitutional guaranteed protection against double jeopardy was violated when he was convicted of first[-]degree criminal sexual conduct, during the commission of a felony, and the underlying offense of child sexually abusive activity/material.

> V.     [Petitioner] is entitled to resentencing where the trial court erred in overruling the defense's objections to the scoring Offense Variables 10, 11, and 13, and the sentences imposed are in excess of the correct guidelines range.

On August 23, 2005, in a published opinion, the Court of Appeals rejected Petitioner's claims and affirmed his convictions and sentences. *People v. Wilkens*, 267 Mich.App. 728, 705 N.W.2d 728 (2005) (Cooper, J., concurring in part and dissenting in part). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as

---

[2]Rather than using the full name of the victim, the initials of the minor is used to protect his or her identity.

raised in the Court of Appeals.  The Michigan Supreme Court denied Petitioner's application on March 29, 2006.  *People v. Wilkens*, 474 Mich. 1099, 711 N.W.2d 73 (2006) (Cavanagh, J., would grant leave to appeal, Kelly, J., would remand for resentencing).  On June 30, 2006, Petitioner's motion for reconsideration was also denied.  *People v. Wilkens*, 475 Mich. 899, 716 N.W.2d 268 (2006) (Kelly, J., dissenting).

From the record, it does not appear that Petitioner filed a writ of certiorari with the Untied States Supreme Court or a post conviction motion, pursuant to Mich.Ct.R. 6.500 *et seq*., with the state trial court.  Rather, on June 14, 2007, Petitioner filed this habeas petition, raising the following six claims:

I.  Whether Petitioner's constitutional rights to be free from unreasonable searches and seizures was violated and whether the trial court reversibly erred in denying his motion to suppress the evidence derived, where it was all the poisonous fruit of an illegal search, one which exceeded the scope of consent and was not within the plain view exception?

II.  A.  Did the trial court abuse its discretion and violate Petitioner's constitutional rights to due process and the effective assistance of counsel when it ordered that this case be tried first when the defense was unprepared to fully proceed on a motion to suppress evidence?

B.  Alternatively, did trial counsel deny Petitioner's constitutional rights to the effective assistance of counsel where he failed to adequately prepare, having failed to file a motion to suppress pretrial, costing Petitioner the evidentiary hearing that the court set in anticipation that counsel would file the motion and costing Petitioner the ability to have the court consider testimony that Petitioner would have given at that evidentiary hearing?

III.  Did the trial court reversibly err in holding that consent was not a viable defense to a criminal sexual conduct charge, [MICH.COMP.LAWS] § 750.520b(1)(c), where the alleged victim was [sixteen]-years old, when the underlying felony is a charge of producing child sexually abusive material under [MICH.COMP.LAWS] § 750.145(c), which defines a child as a person less than [eighteen]-years old?  Did the trial court violate Petitioner's constitutional rights to present a defense?

5

IV.     Were Petitioner's constitutional rights to be confronted by and cross examine witnesses against him violated when witness V.C. was not produced for trial and subsequent conviction for first-degree criminal sexual conduct?

V.      Was Petitioner's constitutionally guaranteed protection against double jeopardy violated when he was convicted of first-degree criminal sexual conduct, during the commission of a felony, and the underlying offense of child sexually abusive activity/material?

VI.     Was Petitioner's constitutional right to due process violated when the trial court used the "any evidence" standard in the scoring of Offense Variables 4, 9, 10, and 11, and was erroneously upheld by the Michigan Court of Appeals?

## II.     ANALYSIS

### A.     Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's habeas corpus review of state-court decisions.  Under the AEDPA, a federal court's review of a habeas proceeding is limited.  A federal court may not grant a writ of habeas corpus unless the state adjudication on the merits either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

The Supreme Court clarified that standard in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000):

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of

6

materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

### B.        Unreasonable Search and Seizure Claim

In his first habeas claim, Petitioner argues that his Fourth, Fifth, and Fourteenth Amendment rights to be free from unreasonable searches and seizures were violated by an illegal search, a search which exceeded the scope of his consent and which did not fall within the plain view doctrine.  In addressing this issue, the Michigan Court of Appeals stated:

> The initial search of defendant's home took place under the consent exception.  The scope of a consent search is limited by the object of that search. Defendant admits that he signed a written consent, which did not specify the object of the search and was not limited in any manner.  However, it is undisputed that defendant orally consented to a search for a knife or a gun.  Defendant only limited the search area to exclude the private rooms of his tenants.  Detective Peto's search of the shower for a gun or knife was clearly within the scope of defendant's consent. Under the plain view doctrine, Detective Peto could have seized the device that he discovered in the shower without benefit of a warrant.  Detective Peto was lawfully searching the shower, the device was in plain view, it was suspicious, and detective Peto knew that defendant's female tenants used the bathroom.   Thus, the incriminating nature of the device was readily apparent even though the full nature of the device was unknown at that time.   According to defendant's affidavit, Detective Peto removed screws from the unit and showed them to defendant before the search warrant was obtained.  Even assuming that defendant's statements are true, because [D]etective Peto could have seized the device given its obvious incriminating nature, viewing the device with a flashlight and removal of the screws was also permitted.  No other evidence was seized until after the search warrant was obtained.  Therefore, trial court did not err in admitting the evidence.

*Wilkens*, 267 Mich.App. at 733-34, 705 N.W.2d at 734 (citations omitted).

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-495 (1976); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).  For such an opportunity to have existed, the state must have provided, in the abstract, a

7

mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). "The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided." *Wynne v. Renico*, 279 F.Supp.2d 866, 892 (E.D. Mich. 2003) (citing *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996)).

Therefore, on federal habeas review, a federal court cannot re-examine a petitioner's Fourth Amendment claim that evidence should have been suppressed as "poisonous fruit" of an illegal search, where the state provided an opportunity for full and fair litigation of the habeas petitioner's Fourth Amendment claim prior to trial. *See Walendzinski v. Renico*, 354 F.Supp.2d 752, 759 (E.D. Mich. 2005) (citing *Monroe v. Smith*, 197 F.Supp.2d 753, 766 (E.D. Mich. 2001)).

Moreover, the opportunity to litigate encompasses more than an evidentiary hearing in the trial court. It also includes corrective action available through the appellate process on direct review of the conviction. *See Pulver v. Cunningham*, 419 F.Supp. 1221, 1224 (S.D.N.Y. 1976); *See also Atkinson v. Portuondo*, 269 F.Supp.2d 57, 63 (E.D.N.Y. 2003) (habeas petitioner was not deprived of full and fair opportunity to litigate Fourth Amendment claim that was raised in post conviction proceedings and denied by the trial court on the ground that the pleadings were defective, where the appellate court granted leave to raise claim on direct appeal). Because all of the material facts were before the state appellate courts on direct review, the Michigan Court of Appeals addressed the relevant factual and procedural issues, and the appellate process was not otherwise deficient.

Here, the Court of Appeals concluded that Petitioner consented to a search of the premises, the object of that search could be hidden in a bathroom, meaning the bathroom was within the scope

8

of consent, and the illegal nature of the recording equipment in the community bathroom was apparent and within plain view. Given that record, it is clear that the Michigan courts were cognizant of Petitioner's Fourth Amendment claim and that he received all the process he was due. Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims. Accordingly, his claim concerning the validity of the search and seizure in this case is non-cognizable on habeas review. *Pulver*, 419 F.Supp. at 1224.

### C.     Ineffective Assistance of Counsel Claim

In his second claim, Petitioner argues that he was denied the right to effective assistance of counsel because counsel failed to file a timely motion to suppress, thereby denying him the opportunity to testify at such a hearing. Petitioner alleges that because of trial counsel's ineffectiveness, the trial court refused to hold an evidentiary hearing due to continued delay. Petitioner contends that his testimony at a suppression hearing would have demonstrated that the videotape was inadmissible because the police officers showed him screws that they removed from the bathroom camera's faceplate before a search warrant was obtained. Petitioner also argues that he would have been able to present the testimony of his two tenants who observed the lighting unit dismantled by the police during the course of the consent search. Additionally, Petitioner claims that he would have been afforded the opportunity to present the results of a polygraph test and the testimony of the examiner who performed the test. Therefore, it is Petitioner's position that a reasonable probability exists that the result of his trial would have been different but for trial counsel's errors.

To establish the ineffective assistance of counsel, Petitioner must show: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the

9

Sixth Amendment," and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

Regarding this claim, the Court of Appeals concluded that because the officer could have seized the device itself, and, given its incriminating nature, "viewing the device with a flashlight and removal of the screws was also permitted." *Wilkens*, 267 Mich.App. at 733-34, 705 N.W.2d at 734.

And, regarding the polygraph test, the Court of Appeals found:

In this case, however, defendant did not seek a polygraph examination to prove his innocence of the alleged crime. Rather, he sought a polygraph examination to support his argument that the evidence against him should have been suppressed because of an illegal search and seizure. As discussed above, even accepting defendant's affidavit as true, these facts would not have affected the outcome of the suppression issue. Therefore, defendant cannot establish that the trial court's denial of his request for a polygraph examination was outcome determinative.

*Wilkens*, 267 Mich.App. at 735, 705 N.W.2d at 735.

The Court of Appeals then went on to reject Petitioner's ineffective assistance of counsel

10

claim, stating:

> Similarly, defendant cannot show that counsel was ineffective for failing to file a motion to suppress the evidence before trial, which motion would have allowed defendant to put the statements made in his affidavit on the record in the lower court. Because, as discussed above, defendant's testimony would not have been outcome determinative on this issue, defendant cannot demonstrate ineffective assistance of counsel in this regard.

*Id.* (citations omitted).

Here, the Court finds that, had trial counsel filed a motion to suppress, and, had the trial court suppressed the evidence had Petitioner testified, it is merely speculation on whether the outcome of the trial could have been any different, which is insufficient to demonstrate prejudice. *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004) (citing *McQueen v. Scroggy*, 99 F.3d 1302, 1321 (6th Cir. 1996)). Against that backdrop, the Court concludes that Petitioner is not entitled to habeas relief regarding his ineffective assistance of counsel claims.

### D.      Right to Present a Defense Claim

In his third claim, Petitioner argues that he was denied his right to present a defense because the state courts concluded that consent was only a defense to the above offense if consent was also a defense to the underlying felony.

The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. Texas*, 388 U.S. 14, 19 (1967). However, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Indeed, "[a] defendant's interest in presenting such evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted) (citing *Rock v. Arkansas*, 483 U.S. 44, 55 (1987)). State and federal rulemakers have "broad latitude under the Constitution to establish rules excluding evidence from

11

criminal trials" and "[s]uch rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Id.* at 308. The Supreme Court has found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a "weighty interest" of the accused. *Id.* In the words of the Sixth Circuit, "[o]nly if 'an evidentiary ruling is so egregious that it results in a denial of fundamental fairness [does] it . . . violate due process and thus warrant habeas relief.'" *Baze*, 371 F.3d at 323 (citing *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)).

Furthermore, federal habeas relief is appropriate for a petitioner "in custody in violation of the constitution or laws or treaties of the United States." 28 U.S.C. 2254 (a). Habeas relief may not be based upon a perceived error of state law. *Oveido v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). To the contrary, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v McGuire*, 502 U.S. 62, 67-68 (1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)). As the Supreme Court explained in *Estelle*, habeas review is not intended to reexamine state-court rulings on questions of state law: "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67-68 (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) ( *per curiam* )).

Under Michigan law, a person is guilty of first-degree criminal sexual conduct if that person engages in sexual penetration, with another person under circumstances involving commission of

another felony, MICH.COMP.LAWS § 750.520b(1)(c) :

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
>
> * * *
>
> > (c) Sexual penetration occurs under circumstances involving the commission of any other felony.

Regarding this claim, the Michigan Court of Appeals stated:

> According to the plain language of MCL 750.520b(1)(c), the prosecution must prove two elements: (1) a sexual penetration (2) that occurs during the commission of another felony. Accordingly, regardless of whether the penetration was consensual, if it occurs during the commission of another felony, the elements of MCL 750.520b(1)(c) are satisfied. The question then is whether consent is a defense to the "other felony", i.e., the underlying felony. We hold that if consent is not a defense to the underlying felony, then it is not a defense to the CSC-I charge under MCL 750.250b(1)(c).
>
> In this case, the underlying felony was producing child sexually abusive material in violation of MCL 750.145c(2), which provides, in pertinent part, "A person who . . . produces [or] makes . . . any child sexually abusive activity or child sexually abusive material is guilty of a felony . . . ." The statute defines a "child" as "a person who is less than 18 years of age . . . ." It is undisputed that consent is not a defense to a charge under MCL 750.145c(2). If consent were a defense to the second element of MCL 750.520b(1)(c), i.e., the underlying felony, then it would be an appropriate defense to the charge under MCL 750.520b(1)(c). For example, because consent is a complete defense to the felony of kidnapping, MCL 750.349, consent is a defense to MCL 750.520b(1)(c) when the underlying felony is kidnapping. But here, because consent is not a defense to the underlying felony, producing child sexually abusive material, defendant cannot argue consent as a defense to his charges under MCL 750.520b(1)(c). Therefore, the trial court properly excluded consent as a defense.

*Wilkens*, 267 Mich.App. at 737, 705 N.W.2d at 735-36 (citations omitted).

It is Petitioner's position that, even though the victim in this case could not consent to the production of child sexually abusive material, she could consent to the penetration and, therefore, consent should have been available as a defense. However, the Court of Appeals, in analyzing the

13

statute, correctly determined that the prosecution need only show (1) penetration (2) during the commission of another felony, meaning that consent is only relevant if it could nullify the other felony. This Court is bound by that decision. *Bradshaw*, 546 U.S. at 76. Such a challenge to the interpretation and application of state law is not cognizable on habeas review. Against that backdrop, Petitioner is not entitled to habeas relief regarding this claim.

### E.  Confrontation Clause Claim

Petitioner argues in this fourth claim that his right to confront and cross-examine the female victim and his right to due process were violated because she was not produced as a witness against him. Petitioner actually argues that the prosecution should have been required to present the female victim as a witness because she would have been helpful to his defense.

The Sixth Amendment, applicable to the States, *Melendez-Diaz v. Massachusetts*, --- U.S. ----, ----, 129 S.Ct. 2527, 2531 (2009), "guarantees to a criminal defendant the right 'to be confronted with the witnesses against him.'" *Danner v. Motley*, 448 F.3d 372, 377 (6th Cir. 2006). This includes both the literal right to confront witnesses at the time of trial and the right to cross-examination. *Delaware v. Fensterer*, 474 U.S. 15, 18-19 (1985). The prosecution must make a good-faith effort to produce relevant witnesses at trial. *See Barber v. Page*, 390 U.S. 719, 724-25 (1968). Whether the prosecution has made a good-faith effort is reviewed for reasonableness. *Id.*

"The failure to produce a relevant witness only serves as a basis for habeas corpus relief if, under federal constitutional law, the petitioner is denied a fundamentally fair trial." *Payne v. Smith*, 207 F.Supp.2d 627, 646-47 (E.D. Mich. 2002).

14

Constitutional errors, including Confrontation Clause errors, can be harmless. *Hedgpeth v. Pulido*, --- U.S. ----, ----, 129 S.Ct. 530, 532 (2008); *Delaware v. Van Arsdall*, 475 U.S. 673, 684, (1986). The test on habeas review of constitutional errors is whether the error had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

In addressing Petitioner's claim on appeal, the Court of Appeals found:

> Defendant next argues that his right to confront and cross-examine the female victim and his right to due process were violated because she was not produced as a witness against him. Although defendant states that he had the right to confront a witness "against him," defendant is not claiming that evidence of the female victim's out-of-court statements should have been excluded because the female victim did not appear at trial. Further, defendant, while using the phrase "against him," actually argues that the prosecution should have been required to present the female victim as a witness because she would have been helpful to his defense.

> In a case in which the defendant raised a similar issue, *People v. Lee*, 212 Mich.App. 228, 257-258, 537 N.W.2d 233 (1995), the defendant argued that the prosecution denied him the right to confront witnesses because some witnesses were not called to testify. This Court, noting that the defendant was able call these witnesses on his own, found no violation of the defendant's right of confrontation or due process because "[w]hile the prosecutor has certain obligations with respect to witnesses, it is not the prosecutor's responsibility to call any witnesses whom the defendant believes may support his defense in some way." *Id.* Here, the prosecution did not offer the female victim's statements against defendant at trial. On appeal, defendant argues that if she had testified, she would have testified favorably for defendant. Thus, as in *Lee*, the prosecution had no obligation to call a witness that defendant believed would be favorable to him, and defendant has failed to explain why he was unable to call the female victim as his own witness. We discern no constitutional violation arising from the female victim's absence at trial.

*Wilkens*, 267 Mich.App. at 744-45, 705 N.W.2d at 739.

Here, the prosecution explained that it made great efforts to subpoena and produce the sixteen-year-old victim depicted in Petitioner's videotape, but was unable to produce her at trial.

15

Although the victim could not be produced, the trial court allowed defense to admit into evidence two audio-taped interviews of the victim conducted by defense counsel's own investigator; on those tapes the victim indicates her consent.  Therefore, Petitioner was able to admit evidence that the victim consented.

In analyzing this issue, the Court of Appeals concluded that Petitioner was not challenging previous allegations against him by the victim, but rather, he was objecting to the fact that the prosecution failed to produce the victim, who may have offered favorable testimony.  Furthermore, Petitioner does not challenge any particular statements against him by the sixteen-year-old victim, but rather, he challenges the admission of the videotape itself.  The acts depicted on the tape, however, are not statements, testimonial or otherwise.  And Petitioner fails to explain what testimony the female victim could provide that would have cast doubt on the accuracy of the recording that depicted the offense, particularly where consent is not a defense to the production of child sexually abusive material.

Nor was there a substantial and injurious effect or influence on the determination of guilt, given that the favorable testimony Petitioner wished to elicit was admitted into evidence through the earlier recorded statements proffered by defense counsel.  If anything, Petitioner benefitted from the victim's absence, as her testimony would have been cumulative to the recorded statements and her absence prevented the prosecution from potentially eliciting damaging testimony.  Considering the videotape and testimony of the fourteen-year-old victim, evidence of Petitioner's guilt was overwhelming.

Against that backdrop, the Court finds that the Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Petitioner is

16

therefore not entitled to habeas relief regarding this claim.

**F.     Double Jeopardy Claim**

In his fifth habeas claim, Petitioner argues that his convictions for both first-degree criminal sexual conduct and producing child sexually abusive material violates double jeopardy, because the underlying offense is an element of the criminal sexual conduct charge.   The Court of Appeals rejected this argument, concluding that those offenses intended to punish distinct social harms:

> Defendant next argues that his guaranteed constitutional protection against double jeopardy was violated when he was convicted of CSC-I and production of child sexually abusive material.   This issue was previously resolved in *People v Ward*, 206 Mich App 38, 43; 520 NW2d 363 (1994), in which this Court held:
>
>> Because the Legislature intended to punish conduct violative of distinct social norms and did not authorize punishments based on a continuum of culpability, it is apparent that the Legislature intended that the crimes of criminal sexual conduct and child sexually abusive activity be punished separately.    Accordingly, we hold that defendant's convictions do not violate the double jeopardy protection against multiple punishments.
>
> Following *Ward*, we conclude that defendant's claim has no merit.

*Wilkens*, 267 Mich.App. at 745, 705 N.W.2d at 739.

The Double Jeopardy Clause of the Fifth Amendment provides that no person may "be subject for the same offen[s]e to be twice put in jeopardy of life or limb."   U.S. Const. amend. V.  The Double Jeopardy Clause protects against multiple punishments for the same offense, *Witte v. United States*, 515 U.S. 389, 391(1995), but a single transaction can give rise to distinct offenses without violating the Double Jeopardy Clause, *Albernaz v. United States*, 450 U.S. 333, 344 n. 3 (1981).   "Whether punishments are 'multiple' under the double jeopardy clause is essentially a question of legislative intent."  *Banner v. Davis*, 886 F.2d 777, 779-80 (6th Cir. 1989) (citing *Ohio v. Johnson*, 467 U.S. 493, 499 (1983)).   A federal habeas court is bound by a state court's

17

construction of its own statutes and a state court's determination of its Legislature's intent. *Banner*, 886 F.2d at 780.

The traditional test for double jeopardy claims is the same-elements test set forth in *Blockburger v United States*, 284 U.S. 299 (1932); *Rashad v. Burt*, 108 F.3d 677, 679 (6th Cir. 1997). The same-elements test is "whether each [statutory] provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. Simply put, the test asks "whether each offense contains an element not contained in the other." *United States v. Forman*, 180 F.3d 766, 768 (6th Cir. 1999) (citing *United States v. Benton*, 852 F.2d 1456, 1465 (6th Cir. 1988)). A mere overlap in proof, however, does not establish a double-jeopardy violation. *United States v. Felix*, 503 U.S. 378 (1992). Furthermore, the *Blockburger* test guides federal courts in determining the scope of federal statutes: "[i]t does not necessarily apply to a federal court's construction of a state statute." *Banner*, 886 F.2d at 780-81. Therefore, "[e]ven if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Johnson*, 467 U.S. at 499 n. 8 (italics provided).

Under MICH.COMP.LAWS § 750.520b(1)(c), a person is guilty of first-degree criminal sexual conduct if that person engages in sexual penetration with another person under circumstances involving commission of another felony:

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
>
> * * *
>
> (c) Sexual penetration occurs under circumstances involving the commission of any other felony.

Under MICH.COMP.LAWS § 750.145c(2), a person who induces a child to engage in a child

18

sexually abusive activity for the purpose of producing child sexually abusive material is guilty of a felony:

> (2) A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material is guilty of a felony, punishable by imprisonment for not more than 20 years, or a fine of not more than $100,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child.

A "child" is defined under the statute as any person less than eighteen years of age. MICH.COMP.LAWS § 750.145c(1)(b). "Child sexually abusive material" is broadly defined to include any depiction of a child engaging in a listed sexual act. MICH.COMP.LAWS § 750.145c(1)(m).

Applying the *Blockburger* test, both of those offenses requires proof of a fact the other does not. For purposes of the criminal sexual conduct charge, the prosecution must prove penetration occurring during commission of another felony. For the child sexually abusive material charge, the prosecution must prove a child appears in the material. Furthermore, it is apparent that the Legislature intended to authorize a cumulative punishment by increasing the penalty for a criminal penetration if it occurs during commission of another felony.

Moreover, under the concurrent sentence doctrine "an appellate court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *Dale v. Haeberlin*, 878

19

F.2d 930, 935 n. 3 (6th Cir. 1989), *cert. denied*, 494 U.S. 1058 (1990) (citing *United States v. Jeter*, 775 F.2d 670 (6th Cir. 1985), *cert. denied*, 475 U.S. 1142 (1986)).

In this case, Petitioner is collaterally challenging his conviction and sentence for child sexually abusive material as a predicate to the first-degree criminal sexual conduct charge. Even assuming Petitioner is correct, under the concurrent sentence doctrine, his sentence for the child sexually abusive material conviction is less than and served concurrent with his sentence for that conviction. Therefore, Petitioner is not entitled to habeas relief regarding this claim.

### G.      Sentencing Claims

In his sixth and final claim, Petitioner asserts that he is entitled to resentencing because the sentences imposed were above the guidelines range. A claimed violation of state law regarding sentencing is not cognizable on habeas review. *Doyle v. Scutt*, 347 F.Supp.2d 474, 485 (E.D. Mich. 2004) (citing *Estelle*, 502 U.S. at 67-68). Sentencing matters are the province of the state criminal justice system and ordinarily "do not raise constitutional issues which can be reached by habeas corpus review." *Id.* (citing *Holmes v. Israel*, 453 F.Supp. 864 (D.C. Wis. 1978), *aff'd*, 618 F.2d 111 (1980)). The Due Process Clause precludes a sentencing court from relying on materially false or unreliable information when imposing sentence. *United States v. Tucker*, 404 U.S. 443, 447-49 (1972). In order to show use of incorrect information violated due process, the petitioner must demonstrate that the information was material, false, and relied upon in imposing sentence. *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir. 1990).

Here, Petitioner claims his right to due process was violated because the facts relied on by the trial court, when assigning points for Offense Variables (OV) 4, 9, 10, and 11, were not proven

20

by a preponderance of evidence.  A fair reading of Petitioner's arguments, however, indicates that he does not dispute the existence of the facts relied on by the sentencing court, but rather, he disagrees with the trial court's application of those facts to the guidelines.  Petitioner argues that there was no evidence of psychological injury to either victim, because the fourteen-year-old boy enjoyed himself and the videotaped threats of violence against the sixteen-year-old girl were not meant to be serious. The Court of Appeals rejected that argument, concluding the behavior of both victims on the videotape and the behavior of the fourteen-year-old-victim at trial supported a finding of psychological injury:

> With regard to the male victim, the videotape reveals that his attitude took a disturbing turn during the course of the 41-minute incident.  Toward the end, he resorted to making violent threats against the female victim to coerce her into continuing the sex acts.  This, in light of the fact that the male victim's demeanor on the stand was rather casual, indicates that the male victim suffered serious psychological injury as a result of this incident such that he was rendered unable to comprehend the gravity of his actions.  This supports the trial court's scoring of OV 4.

> With regard to the female victim, the trial court relied on statements that she made "on the videotape and everything else."  Though the female victim did not testify, the videotape shows that the female victim repeatedly indicated that she did not want to continue the sex acts and that the "motion lotion" was hurting her, yet defendant asserted that the videotape was not worth the money he spent on the female victim's clothes and urged the female victim to continue.  Ultimately, the female victim sat up in bed and remained silent while defendant attempted to coax her into continuing. This evidence indicates that defendant's actions caused the female victim anxiety, altered her demeanor, and caused her to withdraw; it supports a finding of serious psychological injury occurring to the female victim.

*Wilkens*, 267 Mich.App. at 740-41, 705 N.W.2d at 737-38.


Petitioner does not dispute the behavior of the victims on and off the videotape, but rather, he disagrees that it supports a finding of psychological injury under the guidelines.  However, such

21

a claim is based on the application of the guidelines and is not cognizable on habeas review.

Next, Petitioner argues that OV 9 was improperly scored because neither child victim was ever placed in danger of physical injury or death. As the Court of Appeals explained, in addition to threats made on the videotape, both children were given a "large quantity of alcohol" by Petitioner, sufficient to support a finding that they were placed in danger of physical injury:

> During the making of the videotape, the male victim threatened the female victim with physical harm. Additionally, at defendant's suggestion, the male victim used "motion lotion," which the female victim complained burned her. Thus, she was placed in physical danger. Also, the female victim and the male victim, both minors, were placed in danger of physical injury from having drunk a large quantity of alcohol provided by defendant. The record supports the scoring of OV 9.

*Wilkens*, 267 Mich.App. at 741-42, 705 N.W.2d at 738.

Again, Petitioner does not challenge the accuracy of the facts. Rather, he challenges their application to the guidelines, flatly asserting the children were not placed in danger. This claim is not cognizable on habeas review.

Petitioner also argues that OV 10 was improperly scored because there was no evidence that either of the child-victims being videotaped was "vulnerable." Both of the penetrations were related to the female victim. The Court of Appeals reasoned that providing a teen runaway with alcohol and buying her clothing, then requiring that she participate in a sex-video as repayment, supports the conclusion that Petitioner took advantage of a vulnerable victim:

> The word "vulnerability" means "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). The female victim, a 16-year-old with a history of running away from her adoptive parents, stayed in defendant's house for a period. On the night in question, defendant provided her with alcohol and purchased clothes and food for her. The "Mixed Signals" videotape was then made so that the female victim could pay defendant back for the clothes. The record supports that defendant "exploited" the victim's youth by manipulating her with clothes and alcohol in exchange for making the sexually abusive videotape.

22

*Wilkens*, 267 Mich.App. at 742, 705 N.W.2d at 738.

Petitioner does not challenge the victim's age, but appears to argue that the trial court failed to make a specific factual finding that she was vulnerable due to her age. That claim is based on the premise that the trial court either misunderstood the term "vulnerable" or the need to make a factual finding of vulnerability. Nonetheless, either claim is based on a perceived error in the application of state law and is therefore not cognizable on habeas review.

Petitioner also argues that OV 11 was improperly scored because he was only charged with one penetration in Count 1 and as an aider and abettor to the penetration in Count 2. As the Court of Appeals explained, there was evidence of penetrations other than those charged sufficient to support scoring OV 11 for both counts:

> The evidence supports the score of 25 points for OV 11 for count I because defendant was charged with only one penetration, yet he penetrated the female victim more than once during the making of the videotape. Similarly, in scoring count II, defendant was sentenced as an aider and abettor to the male victim's penetration of the female victim. The evidence demonstrates that, in addition to aiding and abetting the male victim's penetrations of the female victim, defendant also penetrated the female victim at least one other time. Thus, the evidence supports scoring 25 points for OV 11 for count II. There was no error in the scoring of this offense variable.

*Wilkens*, 267 Mich.App. at 743, 705 N.W.2d at 738-39.

As discussed, Petitioner does not dispute the existence of the other penetrations, particularly given that those penetrations are depicted on the videotape he recorded. Rather, he disputes the application of those facts to the sentencing guidelines, which is not a cognizable claim on habeas review. Against that backdrop, Petitioner is not entitled to habeas relief regarding these claims.

23

**IV.     CONCLUSION**

Accordingly, **IT IS ORDERED** that Petitioner's "Petition for Writ of Habeas Corpus" [dkt.

# 1] is **DENIED** with prejudice.

s/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  October 28, 2009

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on
October 28, 2009.

s/Denise Goodine_____
Case Manager

24